

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| vs. § | Criminal Action No.: 3:22-653-MGL-1 |
| § | |
| HARRY LEE OLIN, § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE
AND DEEMING AS MOOT DEFENDANT'S MOTION TO APPOINT COUNSEL**

## I.   INTRODUCTION

Pending before the Court are Defendant Harry Lee Olin's (Olin) motion for compassionate release and motion to appoint counsel. Having carefully considered the motions, the response, the record, and the applicable law, it is the judgment of the Court Olin's motion for compassionate release will be denied, necessarily deeming as moot his motion to appoint counsel.

## II.   FACTUAL AND PROCEDURAL HISTORY

Olin pled guilty to one count of possession with intent to distribute and distribution of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. At sentencing, he received a total offense level of thirty-five and a criminal history category of IV. Together, this meant Olin's Guideline range, taking into account the statutorily authorized maximum sentence of twenty years, was 235 to 240 months of imprisonment. The Court, however, granted a variance based on

the parties' Federal Rule of Criminal Procedure 11(c)(1)(C) stipulation and sentenced Olin to 120 months of imprisonment.  His sentence was subsequently reduced to 96 months of imprisonment.

As is relevant here, a local detention center referred Olin to a nephrologist in January 2023 after testing showed his kidneys were functioning at only 19%.  The nephrologist diagnosed Olin with stage IV kidney disease due to untreated hypertension and further testing indicated his kidney function had reduced to 18%.

In February 2024, Olin was admitted to Federal Correctional Institute Atlanta (FCI Atlanta).  Post-admission blood tests from March 2024 and May 2024 indicate his kidneys were then functioning at 20% and 21%, respectively.  And, Olin missed two scheduled appointments with the Federal Bureau of Prisons (BOP) Health Services during this interval.

Olin filed the instant motions in July 2024.  He contends the BOP refuses or is unable to treat his kidney disease "in a manner that does not cause irreparable deterioration and which will likely lead to death if not addressed immediately."  Olin's Motion at 1.  Olin attests his condition has progressed due to non-treatment since he was admitted to FCI Atlanta and avers he should now be on dialysis.

In August 2024, the BOP referred Olin to a chronic kidney disease clinic.  There, a nephrologist evaluated Olin's most recent test results, adjusted his medications, and stated Olin will need dialysis in the future if his kidney function declines and he becomes symptomatic.  Finally, the nephrologist recommended an eight-week follow up.  In less than one week, the BOP updated Olin's prescriptions and scheduled a follow-up appointment.

Thereafter, the government filed a response to Olin's motion for compassionate release.  The Court, having been fully briefed on the relevant issues, will now adjudicate the motion.

### III.     STANDARD OF REVIEW

After a defendant has exhausted his administrative remedies, "[a] district court analyzes [his] compassionate release motion in two steps." *United States v. Woody*, 115 F.4th 304, 310 (4th Cir. 2024).

"First, the [C]ourt must determine [the defendant] is eligible for a sentence reduction because he has shown 'extraordinary and compelling reasons' for release." *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024) (citing *United States v. Hargrove*, 30 F.4th 189, 194–95 (4th Cir. 2022)); 18 U.S.C. § 3582(c)(1)(A)(i).  In doing so, the Court shall consider whether the extraordinary and compelling reasons are "consistent with applicable policy statements issued by the Sentencing Commission[.]"  18 U.S.C. § 3582(c)(1)(A).  The applicable policy statement identifies six circumstances that, individually or in combination, may provide extraordinary and compelling reasons for a sentence reduction: (1) certain medical circumstances of the defendant; (2) the defendant's age and conditions related to his age; (3) the defendant's family circumstances; (4) the fact the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction, of a correctional officer, (5) the presence of "any other circumstance or combination of circumstances . . . similar in gravity to" other enumerated circumstances; and (6) the defendant received an "unusually long sentence[.]"  United States Sentencing Guideline (U.S.S.G.) § 1B1.13.

"Second, the [C]ourt [must] consider[] whether the 18 U.S.C. § 3553(a) [(Section 3553(a)] sentencing factors support relief." *Moody*, 115 F.4th at 310 (citing *United States v. Bond*, 56 F.4th 381, 383 (4th Cir. 2023)). !!"District courts 'enjoy broad discretion' in evaluating the [Section] 3553(a) factors when deciding a motion for compassionate release." *Id.* (quoting *United States v. Bethea*, 54 F.4th 826, 834 (4th Cir. 2022)).

3

## IV. DISCUSSION AND ANALYSIS

Initially, Olin has exhausted his administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A) (explaining a defendant may bring a motion for compassionate release only after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier"). The Court will thus turn to the merits of Olin's motion.

### A. *Whether Olin presents extraordinary and compelling reasons warranting a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)*

As noted above, Olin contends he is entitled to compassionate release because the BOP has failed to adequately treat his medical condition. Namely, Olin contends FCI Atlanta is a Care Level 2 facility, and stage IV kidney disease warrants placement at a Care Level 3 or 4 facility. Olin further maintains the BOP has improperly rejected his medical records, refused to perform dialysis, and minimally treated his hypertension.

The government, on the other hand, argues Olin has neglected to demonstrate his medical condition constitutes extraordinary and compelling reasons for compassionate release. The government notes it conferred with the Acting Clinical Director for FCI Atlanta and Regional Medical Director "who stated Olin's condition is not presently critical, but [advised] he will recommend Olin be moved to a Care [Level 3] facility." Government's Response at 4. According to the government, medical records indicate Olin's condition has been stable since he was admitted to FCI Atlanta, and the BOP has appropriately adjusted Olin's medication as recommended by his nephrologist. Thus, although the government concedes "Olin is undoubtedly suffering from a serious physical or medical condition," it asserts the condition "has not substantially diminish[ed] [his] ability to provide self-care within the environment of a correctional facility. Further, he is

4

not suffering from a terminal illness at this stage, and [the] BOP is providing the necessary specialized medical care." *Id.* at 5 (internal quotation marks omitted)).

Extraordinary and compelling reasons exist with respect to a defendant's medical condition where "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). Olin evidently relies on this portion of the policy statement, as he argues the BOP has refused or is unable "to treat [his] [s]tage IV [k]idney [d]isease in a manner that does not cause irreparable deterioration and which will likely lead to death if not addressed immediately." Olin's Motion at 1.

Inasmuch as Olin argues he should be classified as a Care Level 3 inmate under the BOP's classification guide, he is correct. *See* Fed. Bureau of Prisons, Care Level Classification for Medical & Mental Health Conditions or Disabilities at app. 1 (2019) (listing chronic kidney disease where an inmate has a kidney function of less than 30% and where dialysis is not yet necessary as a medical condition defaulting to Care Level 3). Nevertheless, after Olin filed his motions, he was transferred to Federal Medical Center Devens, which appears to serve Care Level 3 inmates.

Although Olin asserts the BOP has failed to address his kidney disease, the government aptly notes medical records indicate the BOP is adequately managing his condition.

Olin's health screen from the day he was admitted to FCI Atlanta fails to reference his kidney disease, but it does reflect his personal and familial history of hypertension. And, during a subsequent assessment, Olin informed the BOP he had stage IV kidney disease, which was properly noted on his medical record, and ordered appropriate blood tests to confirm his condition. The results of these tests indicated Olin's kidneys were functioning at 20%, demonstrating an increase of 2% from his prior results. Further, more recent records indicate dialysis is unnecessary

5

at this juncture, and the BOP has adjusted Olin's medications to better treat his hypertension and kidney disease. And, as evidenced by Olin's presentence investigation report, the Court was aware of Olin's diagnosis when it sentenced him in December 2023.

Although the Court is sympathetic to Olin's diagnosis, for all these reasons, it determines his condition fails to rise to the level of extraordinary and compelling reasons warranting compassionate release.

> **B.**     *Whether the Section 3553(a) factors weigh in favor of a sentence reduction*

Even if the Court determined extraordinary and compelling circumstances exist in this case, analysis of the Section 3553(a) factors would preclude any further reduction in Olin's sentence. *See* 18 U.S.C. § 3582(c)(1)(A) (explaining the Court may grant compassionate release only "after considering the factors set forth in [S]ection 3553(a) to the extent that they are applicable"). These factors include:

> (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)   the need for the sentence imposed—
>
>> (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B)   to afford adequate deterrence to criminal conduct;
>>
>> (C)   to protect the public from further crimes by the defendant;
>>
>> (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3)   the kinds of sentences available;
>
> (4)   the kinds of sentence and the sentencing range established for [the offense] . . . ;
>
> (5)   any pertinent policy statement . . . issued by the Sentencing Commission . . . [;]

6

  (6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

  (7)  the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

  Here, Olin pled guilty to a serious offense. His possession with intent to distribute and distribution of fentanyl resulted in the death of one person and serious bodily injury to another. Olin has previously been convicted of numerous drug-related offenses, as well as shoplifting and retail theft, and he has a developed history of substance abuse spanning nearly forty years.

  Moreover, Olin's 96-month sentence is well below his Guideline range of 235 to 240 months, and it fails to create any unwarranted disparities among similarly situated defendants. Indeed, in the last five fiscal years, a median prison sentence of 240 months was given to similarly situated defendants. *Judiciary Sentencing INformation (JSIN)*, U.S. Sentencing Comm'n, https://jsin.ussc.gov/analytics/saw.dll?Dashboard (last visited April 14, 2025).

  Therefore, considering the balance of the Section 3553(a) factors, the Court determines Olin is unentitled to compassionate release. His current sentence is sufficient but no longer than necessary to promote respect for the law, provide adequate deterrence, reflect the seriousness of his offense, and is a just punishment in this case. The Court will thus deny Olin's motion.

## V. CONCLUSION

  Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Olin's motion for compassionate release, ECF No. 93, is **DENIED**. Because the Court has denied Olin's motion for compassionate release, his motion to appoint counsel, ECF No. 94, is necessarily **DEEMED AS MOOT**.

**IT IS SO ORDERED.**

Signed this 16th day of April 2025, in Columbia, South Carolina.

s/ Mary Geiger Lewis  
MARY GEIGER LEWIS  
UNITED STATES DISTRICT JUDGE